UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Charles Jackson Williams, | ) | Civil Action  No. 5:12-02593-TMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin,[1] Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

A.      Procedural History

In June 2009, Plaintiff filed applications for DIB and SSI alleging a disability onset date of April 14, 2008. Tr. 132-40. After being denied both initially and on reconsideration, Tr. 90-97, on July 23, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 120-23. On February 1, 2011, the ALJ conducted a hearing, taking testimony from Plaintiff and a

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

Vocational Expert ("VE"). Tr. 38-89. The ALJ issued a decision on February 23, 2011, denying Plaintiff's claims. Tr. 14-22. The Appeals Council subsequently denied his request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on September 10, 2012. ECF No. 1.

      B.     Plaintiff's Background and Medical History

           1.     Background

Plaintiff, born on November 4, 1959, was 48 years old as of his alleged onset date, and 51 years old when the ALJ rendered her decision. Tr. 41,132. He graduated from high school, and attended technical school for part of one semester. Tr. 43-44. Plaintiff served in the National Guard from 1980 through 1986, and was honorably discharged. Tr. 42. Plaintiff's prior work history includes temporary work as a forklift operator, assembly line worker, hospital supply company stocker, warehouse manager, manufacturing inspector, and associate at a building supply company. Tr. 45-50,162. Plaintiff alleged that he became unable to work on April 14, 2008, because of anxiety, depression, and obsessive compulsive disorder. Tr. 155.

           2.     Relevant Medical History

Plaintiff was seen by Larry Winn, M.D. of Medical Center of Easley on May 7, 2004 for anxiety and panic. Tr. 301. Plaintiff reported he was "under some extra stress on his job" and described having panic attacks. *Id.* Dr. Winn started Plaintiff on Zoloft 25 mg and increasing to 50 mg in one week, and Ativan ½ mg to take as needed. *Id.* Plaintiff returned to Dr. Winn on June 17, 2004, and reported that "he started feeling better immediately when he started the Ativan." Tr. 300. Dr. Winn prescribed Zoloft 50 mg and Lorazepam ½ mg, and instructed Plaintiff to return in three months. *Id.*

Plaintiff was seen by Boyce Tollison, M.D. of Medical Center of Easley on October 17, 2005. Tr. 299.  Plaintiff indicated he was having difficulty again with anxiety and stress, and was having panic attacks. *Id.* Plaintiff reported that he had been off his medication for a year and a half to two years and generally felt he was doing well. *Id.* Plaintiff stated that he recently had been laid off his job, was having difficulty finding another job, and had recently remarried. *Id.* Plaintiff indicated he was not depressed. Dr. Tollison put Plaintiff back on Lorazepam ½ mg. *Id.* Plaintiff returned to Dr. Tollison on March 14, 2006, for "significant problems with anxiety disorder and panic disorder." Tr. 297.  Plaintiff stated that he had been unable to return to work for six months because of his anxiety. *Id.* Dr. Tollison prescribed Klonopin 1 mg and made an appointment for a psychiatric evaluation. *Id.*

On September 18, 2009, Plaintiff was examined by Spurgeon N. Cole, Ph.D. at the request of Disability Examiner Carol M. McGauran. Tr. 234-37. Plaintiff indicated that "he has drunk a six-pack each day for the last three months." Tr. 235.  Plaintiff's medications included Lexapro, hydroxyzine, and Strattera, which he had taken for approximately six months. Plaintiff indicated the medications had been "slightly helpful." *Id.* Dr. Spurgeon diagnosed Plaintiff on Axis I with panic disorder with mild agoraphobia, depression not otherwise specified, and alcohol dependency. On Axis II he diagnosed Plaintiff with dependent personality disorder. Tr. 237.

On October 2, 2009, medical consultant ("MC") Michael Neboschick, Ph.D. completed a Psychiatric Review Technique form ("PRTF") for an assessment from April 14, 2008 to October 2, 2009.  Tr. 240-53. The medical disposition noted that a residual functional capacity ("RFC") assessment was necessary. Tr. 240. MC Neboschick found Plaintiff had an affective disorder of depression, not otherwise specified; an anxiety-related disorder of panic disorder with mild

agoraphobia; a dependent personality disorder; and a substance addiction disorder of alcohol dependence. Tr. 243, 245, 247-48. MC Neboschick found that under the "B" criteria of the Listings, Plaintiff had mild limitations in the areas of Restriction of Activities of Daily Living ("ADLs"); moderate limitations in Difficulties in Maintaining Social Functioning and Difficulties in Maintaining Concentration, Persistence, or Pace; and no Episodes of Decompensation. Tr. 250. MC Neboschick noted the evidence did not establish the presence of the "C" criteria. Tr. 251. In his summary, MC Neboschick noted that although Plaintiff's condition was serious, "the evidence does not reflect that the [claimant's] impairments are so severe as to prevent him from performing SRRTs [simple, routine, repetitive tasks]." Tr. 252.

MC Neboschick also completed a Mental RFC Assessment of Plaintiff. Tr. 254-57. In the area of Understanding and Memory, MC Neboschick found Plaintiff was moderately limited in the ability to understand and remember detailed instructions, but otherwise was not significantly limited. Tr. 254. In the area of Sustained Concentration and Persistence, MC Neboschick found Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods, and in the ability to complete a normal workday and workweek without interruptions for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but otherwise was not significantly limited. Tr. 254-55. In the area of Social Interaction, MC Neboschick found Plaintiff moderately limited in the ability to interact appropriately with the general public and in the ability to accept instructions and respond appropriately to criticism from supervisors, but otherwise not significantly limited. Tr. 255. In the area of Adaption, he noted Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, but otherwise not significantly limited. *Id.* In his functional capacity assessment, MC Neboschick opined that

Plaintiff was able to understand and remember simple instructions; sustain attention for simple, structured tasks for periods of two-hour segments; adapt to changes if they are gradually introduced and infrequent; make simple work-related decisions; maintain appropriate appearance and hygiene, recognize and appropriately respond to hazards; work in the presence of others; work best in private work space; and accept supervision if constructively given. Tr. 256. MC Neboschick concluded that Plaintiff would work best in settings that are low volume, slow paced, and do not require direct, on-going interaction with the public. *Id.*

Plaintiff was seen by Ben W. Wilson, M.D. at Medical Center of Easley on October 14, 2009. Tr. 259.  Plaintiff wanted a second opinion on his mental health treatment, and Dr. Wilson referred him to Upstate Psychiatry. *Id.* Dr. Wilson also recommended that Plaintiff undergo a full physical. *Id.*

Plaintiff was seen by doctors with Upstate Psychiatry, P.A. from May 2008 through October 2010. Tr. 260-75, 302-03. Progress notes indicate Plaintiff was treated at various times with Cymbalta, Klonopin, Buspar, Requip, Lexapro, and Adderall. *Id.*

On June 22, 2010, MC Craig Horn, Ph.D. completed a PRTF for an assessment from April 14, 2008 to June 22, 2010.  Tr. 278-91. Horn found Plaintiff had an affective disorder of depression, not otherwise specified; an anxiety-related disorder of panic disorder with mild agoraphobia; a dependent personality disorder; and a substance addiction disorder of alcohol dependence. Tr. 281, 283, 285-86. MC Horn found that under the "B" criteria of the Listings, Plaintiff had mild limitations in the areas of Restriction of Activities of Daily Living ("ADLs"); moderate limitations in Difficulties in Maintaining Social Functioning and in Difficulties in Maintaining Concentration, Persistence, or Pace; and no Episodes of Decompensation. Tr. 288. MC Horn noted the evidence did not establish the presence of the "C" criteria. Tr. 289.

MC Horn also completed a Mental RFC Assessment of Plaintiff. Tr. 292-95. In the area of Understanding and Memory, MC Horn found Plaintiff was moderately limited in the ability to understand and remember detailed instructions, but otherwise was not significantly limited. Tr. 292. In the area of Sustained Concentration and Persistence, MC Horn found Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods, and in the ability to complete a normal workday and workweek without interruptions for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but otherwise was not significantly limited. Tr. 292-93. In the area of Social Interaction, MC Horn found Plaintiff moderately limited in the ability to interact appropriately with the general public and in the ability to accept instructions and respond appropriately to criticism from supervisors, but otherwise not significantly limited. Tr. 293. In the area of Adaption, he noted Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, but otherwise not significantly limited. *Id.* MC Horn's functional capacity assessment was the same as MC Neboschick's assessment from October 2009.

On January 5, 2011, upon referral of his attorney, Plaintiff underwent a Psychiatric Evaluation by Patrick B. Mullen, M.D., P.A. of Poinsett Psychiatric Group. Tr. 304-08. After examination, Dr. Mullen opined that he did not believe Plaintiff's alcohol addiction disorder was pertinent to his disabling psychiatric condition. Tr. 307. Dr. Mullen opined that Plaintiff's psychiatric symptoms have resulted in a marked restriction of ADLs, and Dr. Mullen "would give him a marked rating" in the category of difficulties in maintaining social functioning. *Id.* He also noted the exam evidenced that Plaintiff had difficulties in maintaining concentration, persistence, and pace. Tr. 308. Dr. Mullen noted that Plaintiff "has had at least three episodes of

decompensation." *Id.* He noted that for the past two years Plaintiff has been decompensated for an extended duration. *Id.* Dr. Mullen concluded that Plaintiff's "depression, anxiety, ADD, and OCD are all interrelated and are of sufficient severity to impair him in every arena of his personality functioning." *Id.*

### 3. The Administrative Hearing

#### a. Plaintiff's Testimony

Plaintiff appeared with counsel at his administrative hearing on February 1, 2011. Tr. 40. Plaintiff testified that he was 51 years old, separated from his wife, and lived with his mother. Tr. 41-42. Plaintiff testified that the last day he worked was April 14, 2008. Tr. 44. He had worked for six weeks through a temporary service at Caterpillar as a forklift operator. Tr. 44-45. Plaintiff testified that he quit because he was missing a lot of days and the work was "overwhelming." Tr. 45. Before working at Caterpillar he worked at Easley Custom Plastics on an assembly line, but quit that job after a month because he could not keep up. Tr. 45-46. Plaintiff testified that prior to that job he worked several short-term jobs including work as a stocker, sales associate, inspector, and warehouse manager. Tr. 46-50. Plaintiff testified that it was hard for him to focus and maintain concentration due to nervousness. Tr. 51. Plaintiff stated that he took Klonopin, Paxil, and Ritalin. Tr. 52-53. Plaintiff testified that he could do laundry, heat a frozen dinner, load the dishwasher, change his bed, and occasionally vacuum, sweep, or mop. Tr. 54. Plaintiff testified that he did not grocery shop because he would go into the grocery store and have a panic attack. Tr. 55. Plaintiff testified that he watched television, did not read, did not belong to any clubs or organizations, and did not have any friends. *Id.* Plaintiff said he saw his doctor about once every three months. *Id.* Plaintiff stated that he had a driver's license and drove, but he did not have any hobbies. Tr. 56. Plaintiff stated that he slept "a lot" during the day and he slept at night. *Id.*

Plaintiff stated that he like to cut the grass "if [he] can get it finished." *Id.* Plaintiff took care of his own hygiene, and smoked a pack of cigarettes a day. Tr. 56-57. Plaintiff stated that he had not consumed alcohol in 58 days. Tr. 57.

Plaintiff testified that the job as forklift driver required him to be around people and he was unable to concentrate and focus, and had nervous tension. Tr. 58. When asked why he could not do the type of work when people were not around, such as night time janitorial work, Plaintiff stated he had problems "actually starting the task and finishing it." *Id.* Plaintiff testified that the ADHD was a big part of what kept him from working, along with the anxiety. Tr. 59. Plaintiff also testified that he was unable to stand in one place for a long period of time because his back would start to ache. Tr. 60. He also stated that a side effect of his medication was that it made him sleepy. *Id.* Plaintiff testified that as he got older it became more difficult to function with the panic attacks and depression. Tr. 63. Plaintiff said he felt like "a bundle of nerves." Tr. 65. Plaintiff testified that he has gone as long as a week without bathing, and his mother would prod him to bathe. Tr. 67. Plaintiff stated that he would be unable to focus, sit still, or stand still for eight hours to work. Tr. 67-68.  Although a state agency opinion stated that Plaintiff could sit or stand and focus for up to a two-hour period, Plaintiff testified that "at this stage" he would be unable to do it. Tr. 68. Plaintiff testified that he had obsessive compulsive disorder and that he checks light switches and doors and counts window panes. Tr. 69.  Plaintiff stated that he missed a lot of time from work because of anxiety and depression, and that sometimes he would walk out of work because he could not handle it. Tr. 72. Plaintiff testified that he was compliant with his medications. Tr. 76-77.

b.      VE Testimony

VE Vincent Hecker also testified at the administrative hearing. Tr. 79-89. He indicated that Plaintiff's past relevant work ("PRW") as a sales associate in roofing was "light, with an SVP: 3 but as performed heavy." Tr. 79. He identified other PRW as an inspector as "sedentary SVP: 2 as performed, medium. . . . stocker, heavy, SVP: 4." Tr. 80. The ALJ posed a hypothetical question regarding a 48-year-old individual with a high school education, with the same PRW as Plaintiff with the limitations of simple repetitive work because of problems with focus and concentration, non pace-oriented work, no more than occasional interaction with the public, and no more than frequent interaction with coworkers, and not a lot of changes on the job. Tr. 80-81. The VE responded "no" to the ALJ's questions whether there was any PRW to which this individual could return, or whether there were any transferable skills. Tr. 81. The ALJ asked what "unskilled simple repetitive work" was available considering the limitations. The VE provided three jobs: industrial cleaner, kitchen helper, and hospital food service worker, which "are examples of medium unskilled jobs and nationally 2,500,000 and in South Carolina, 7 to 8,000." *Id.*

Plaintiff's counsel asked the VE if Plaintiff, based on his testimony, would be able to do his PRW and the VE responded he would not because he needed to be able to focus and perform job functions for at least two-hour periods. Tr. 82-83. The VE testified there would be no work available for a person who, because of high levels of anxiety and panic attacks, would walk away from their job completely, or several times a day walk away from their work station. Tr. 83-84. Plaintiff's counsel asked about jobs available to a person who needed "private work space" and the VE identified industrial cleaner. Tr. 87. Counsel qualified the ALJ's hypothetical with a

person who was "not pace oriented," defined to be a person whose pace would be below a

normal production pace. Tr. 88. The VE testified there would be no work available. Tr. 89.

II.    Discussion

    A.    The ALJ's Findings

In her February 23, 2011, decision, the ALJ made the following findings of fact and

conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security
Act through September 30, 2013.

2.    The claimant has not engaged in substantial gainful activity since April 14,
2008, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et
seq.*).

3.    The claimant has the following severe impairments: attention deficit
hyperactivity disorder, depression, and anxiety (20 CFR 404.1520(c) and
416.920(c)).

4.    The claimant does not have an impairment or combination of impairments
that meets or medically equals one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that
the claimant has the residual functional capacity to perform a full range of
work at all exertional levels but with the following nonexertional
limitations: the claimant is limited to simple, repetitive work due to
concentration and focus problems. His work cannot be pace oriented or
require more than occasional interactions with the public. He can have no
more than frequent interactions with co-workers.

6.    The claimant is unable to perform any past relevant work (20 CFR
404.1565 and 416.965).

7.    The claimant was born on November 4, 1959 and was 48 years old, which
is defined as a younger individual age 18-49, on the alleged disability
onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to
communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 14, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 16-22.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner,

that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff argues that the ALJ erred by: (1) failing to properly assess Plaintiff's mental impairments; (2) failing to properly assess the medical opinion evidence; and (3) failing to properly assess Plaintiff's credibility.  Pl.'s Br. 21-36, ECF No. 19.

1.    Plaintiff's Mental Impairments

Plaintiff asserts that while the ALJ performed a function-by-function assessment of Plaintiff's impairments as set forth in the regulations, the ALJ did not explain the assessment in the manner required by the regulations because she "ignored and omitted evidence suggesting much greater restrictions . . . than acknowledged in the hearing decision." Pl.'s Br. 22.  Plaintiff asserts that the ALJ's comment that Plaintiff had only mild restrictions in ADLs was not supported by the evidence or by the opinions of Drs. Cole and Mullen. *Id.* at 23-24.

The regulations provide steps that must be applied in evaluating mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a.  The ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to substantiate the presence of a medically determinable mental impairment. *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. *Id.* §§ 404.1520a(d), 416.920a(d). The ALJ considers four broad functional areas in order to rate a claimant's degree of functional limitation: activities of daily living; social functioning; concentration, persistence,

or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C. The ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.* §§ 404.1520a(c)(2), 416.920a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth functional area—episodes of decompensation—uses a four-point scale: none, one or two, three, and four or more. *Id.*

In this case, citing to Sections 12.04 and 12.06[3] of the Listings for Mental Disorders, the ALJ found the Plaintiff had mild restriction in ADL's, and moderate restrictions in the areas of social functioning, and in concentration, persistence, or pace. Tr. 17. The ALJ found no episodes of decompensation. *Id.* The ALJ concluded that:

> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There was no medically documented history of repeated episodes of extended decompensation, of a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would cause decompensation, or of a history of one or more years' inability to function outside a highly supportive living arrangement. In addition, there is no evidence that the claimant's mental condition has resulted in the claimant's complete inability to function independently outside the area of the claimant's home.

---

[3] Listing 12.00 refers to Mental Disorders. Section 12.04 is the listing for "Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Section 12.06 describes Anxiety Related Disorders in which "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms[.]" *Id.* § 12.06.

Tr. 17.

Plaintiff submits that the ALJ's findings with regard to his ADLs, social functioning, and concentration are not supported by the evidence. *Id.* at 24-26. The Commissioner argues that it "was the ALJ's duty to make findings of fact and resolve conflicts in the evidence." Def.'s Br. 10, ECF No. 21. The Commissioner asserts the ALJ's decision is supported by substantial evidence. Plaintiff replied that the "ALJ failed to consider the facts that are favorable to [Plaintiff's] claims and resolve the conflicts that the facts elicit." Pl.'s Reply Br. 1, ECF No. 25.

As required by the regulations, in her decision the ALJ documented application of the proper technique by incorporating pertinent findings and conclusions as to the degree of limitation in each of the functional areas. Tr. 17.  Plaintiff does not argue that the ALJ failed to assess Plaintiff's mental impairments according to the special technique contained in the regulations.  Rather, Plaintiff argues that the ALJ did not explain the assessment in the manner required by the regulations because the ALJ did not include evidence unfavorable to her decision.

For example, with regard to ADLs, Plaintiff asserts the ALJ failed to include evidence that showed Plaintiff was unable to care for his personal hygiene, when he lived alone he allowed dirty dishes to pile up, or that his obsessive-compulsive disorder interfered with his daily routine. Pl.'s Br. 23. The ALJ noted that Plaintiff could independently manage his personal care, and could perform household chores with the encouragement of his mother with whom he lives. Tr. 17.  A review of the record indicates that the examples cited by Plaintiff were one-time occurrences. Plaintiff testified that he had "gone as long as a week without a bath," but he also testified that he was able to take care of his own personal hygiene. Tr. 56-57, 67. Plaintiff testified that when he lived alone after his divorce he allowed dirty dishes to accumulate to the

point that he had to put them in the bathtub to soak them. Tr. 66. However, Plaintiff also testified that he now lives with his mother and is able to help with loading the dishwasher, changing his bed, and occasionally vacuuming, sweeping, and mopping. Tr. 54. The ALJ also noted these activities in her RFC assessment. Tr. 18.

With regard to social functioning, Plaintiff asserts that the ALJ's reference to Plaintiff's ability to "drive and shop with his mother" and the statement that Plaintiff "primarily" socializes with his family are both misleading because he would have panic attacks in the grocery store and he was isolated from "everyone except family." Pl.'s Br. 24. In finding that Plaintiff had moderate difficulties in social functioning, the ALJ noted that Plaintiff was prone to panic attacks, spent most of his time at home, and socialized primarily with his family. Tr. 17. The ALJ also noted that Plaintiff was able to drive and shop with his mother. *Id.*

Plaintiff submits that the ALJ should have found that he had a marked limitation with regard to concentration based on the finding of Dr. Cole that Plaintiff's "ability to concentrate in a work environment would be more than moderate due to the combined effects of his impairments." Pl.'s Br. 25-26. The ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence or pace; she also noted Plaintiff's alleged problems with concentration, understanding, and following instructions. Tr. 17. In support of her finding the ALJ also noted Plaintiff's responses to Dr. Cole during his consultative examination. *Id.*

Upon review of the record, the undersigned finds that the ALJ's conclusion is supported by substantial evidence. The ALJ considered the evidence and Plaintiff's testimony in her functional assessment. *See* Tr. 17. "Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment." *Washington v. Astrue*, 659 F. Supp. 2d 738, 753 (D.S.C. 2009) (citing *Blalock v. Richardson*, 483 F.2d 773, 775

(4th Cir. 1972)). *See generally Jackson v. Astrue*, 8:08-2855-JFA, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions.") (internal quotation and citations omitted). Further, in her RFC assessment, the ALJ discussed in more detail Plaintiff's mental impairments, the record evidence, and her findings with respect to those impairments. Tr. 18-20. Accordingly, the court finds Plaintiff's argument on this point is without merit because the ALJ performed the special technique for assessing the severity of a claimant's mental impairments and adequately documented her application of the technique.

2.    Medical Opinion Evidence

Plaintiff first argues that the ALJ erred because, although she gave Dr. Cole's opinion significant weight, she did not explain what part of Dr. Cole's opinion was adopted in the RFC assessment, what part was rejected, and why. Pl.'s Br. 29. Plaintiff also asserts the ALJ failed to explain how Dr. Mullen's opinion, which was granted minimal weight, contrasted with the other record evidence. *Id.* at 31. The Commissioner argues that, contrary to Plaintiff's suggestion, the ALJ's RFC assessment was consistent with the opinions of Dr. Cole, and state agency physicians, Drs. Neboschick and Horn. Def.'s Br. 12-13. The Commissioner states that the ALJ's decision with regard to Dr. Mullen's opinion was supported by the objective medical evidence of record noting Plaintiff's minimal treatment for his mental disorder and nonmedical evidence of Plaintiff's functioning. *Id.* at 15-16.

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2).

However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d at 35). Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96–2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96–2p.

Having reviewing the record, the undersigned finds the ALJ appropriately considered the opinions of Drs. Cole and Mullen. With regard to Dr. Cole's opinion, the ALJ outlined the basis for Dr. Cole's opinion and found the following: "To the extent that it is consistent with the residual functional capacity determination, the undersigned gives this opinion significant weight in limiting the claimant to simple, repetitive, non-paced work due to his concentration and focus

problems and limiting his interactions with others due to his anxiety." Tr. 19.  As required, the

ALJ provided detailed reasons why she gave Dr. Mullen's opinion minimal weight. Citing to

both Dr. Mullen's report, Tr. 304-08, and Plaintiff's function report, Tr. 193-200, the ALJ

explained why she thought it was inconsistent with other evidence in the record.

> Dr. Mullen opined that the claimant was markedly restricted in activities of daily
> living and markedly restricted in social functioning. The examiner also opined
> difficulties in concentration, persistence and pace and noted three episode[s] of
> decompensation, involving times that the claimant did not work or was between
> jobs. The undersigned finds that Dr. Mullen's opinion contrasts sharply with the
> other evidence of record, which suggest minimal treatment and only moderate
> limitations at best, with no episodes of decompensation. In function reports, the
> claimant admits that while he often needs encouragement from his mother, he is
> able to perform several household activities including cutting grass, washing the
> car, running errands and performing housework such as dusting, mopping,
> vacuuming and ironing. The claimant can independently manage his personal care
> and cooks simple meals daily. He is able to drive and shop in stores, although he
> has had panic attacks on occasion. He attends cookout[s] with his family every
> couple of weeks.

Tr. 19.  The ALJ also considered the opinions the state agency psychologists and noted that

because they were non-examining their opinions did not deserve as much weight as those of

examining or treating physicians. However, their "opinions do deserve some weight, particularly

in a case like this in which there exist a number of other reasons to reach similar conclusions (as

explained throughout this decision). Notably, the record does not contain any opinions from

treating physicians indicating that the claimant is disabled or even has limitations greater than

those determined in this decision." Tr. 20.

The ALJ concluded that Plaintiff had the RFC to perform the full range of work at all

exertional levels, but with the nonexertional limitations of simple, repetitive work due to his

concentration and focus problems. Tr. 18. The ALJ also found Plaintiff's work "cannot be pace

oriented or require more than occasional interactions with the public. He can have no more than

frequent interactions with co-workers." *Id.* The ALJ articulated sufficient reasons for her RFC

assessment and properly explained her reasoning related to the medical opinions. Furthermore, even if the evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings. Rather, when "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the . . . ALJ[]." *Craig*, 76 F.3d at 590 (internal quotation omitted). The undersigned recommends this challenge to the ALJ's decision be dismissed.

3.    Plaintiff's Credibility

Plaintiff alleges finally that "the ALJ's credibility analysis is not properly explained and merits remand for further administrative proceedings." Pl.'s Br. 35-36.  The essence of Plaintiff's argument is that the "ALJ's credibility analysis involves the same cherry-picking aspect as her evaluation of the mental impairments described in the first argument." *Id.* at 33. The Commissioner asserts that "the ALJ properly considered inconsistencies between Plaintiff's testimony and other evidence of record in evaluating the credibility of his subjective complaints." Def.'s Br. 19.

SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints, the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain.  *See* SSR 96-7p; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d at 591-96. The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face.  The ALJ may consider the claimant's credibility in light of his

testimony and the record as a whole.  If she rejects a claimant's testimony about her pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Regarding Plaintiff's claims that he is unable to work due to mental issues, the ALJ examined the record evidence concerning these claims and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 18. The undersigned finds that, as part of her review of the record as a whole, the ALJ properly completed Step Two of the analysis SSR 96-7p sets out for considering whether a claimant's subjective complaints are credible. *See* SSR 96-7p (requiring that ALJ "make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). Factors the ALJ is to consider include claimant's daily activities and use of pain medication or other treatments for subjective symptoms. *See id.*, 20 C.F.R. § 404.1529(c)(3).

The ALJ considered Plaintiff's testimony regarding his daily activities including testimony that he does little throughout the day other than watching television and sleeping, but also noted that Plaintiff was able to do some household activities. Tr. 18.  The ALJ discussed her

findings regarding Plaintiff's daily activities in detail throughout the RFC assessment portion of her decision, Tr. 18-20, and concluded:

> While the claimant does appear to have some anxiety related issues, which impact his concentration and social interactions, the claimant also appears to have good cognitive functioning as evidenced by his activities of daily living including some level of cooking, cleaning and driving, as well as his ability to socialize with family members frequently and attend church and shop occasionally. He does not receive any mental health therapy and has received no inpatient treatment.

Tr. 20.

The ALJ also discussed Plaintiff's treatment with psychotropic medication, noting that medical records since Plaintiff's "alleged onset date reflect very minimal treatment." Tr. 19. The court finds that substantial evidence supports the ALJ's credibility determination. *See, e.g., Johnson v. Barnhart*, 434 F.3d at 658 (upholding ALJ's credibility determination that was partially based on claimant's "routine" daily activities including watching television, cleaning the house, caring for a pet, and managing household finances).

Upon review of the record, the ALJ's decision, and the parties' briefs, the undersigned finds Plaintiff's argument that the ALJ failed to properly explain her credibility analysis is without merit. The ALJ properly considered the medical and nonmedical evidence in determining Plaintiff's RFC and adequately explained her findings. Therefore, the ALJ's decision as to Plaintiff's credibility and RFC should be upheld.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental condition, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

November 12, 2013                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**